## In re Kula

*J. K. Spurgeon*, for petitioners.

CARR, P. J., February 26, 1947.—This is an appeal by a township board of school directors from a decision of the Superintendent of Public Instruction reversing the action of the school board in discharging a teacher for persistent negligence and persistent and wilful violation of the school laws of the Commonwealth, and ordering the school board to reinstate him. Without passing upon the merits of the case, the Superintendent of Public Instruction held that the teacher had actually been dismissed before the institution of the proceeding against him, contrary to the provisions of the Teachers' Tenure Act, and that the action of the school board was therefore a nullity.

*Findings of fact*

1. On August 30, 1943, the Board of School Directors of Georges Township, appellant, executed and delivered to Joseph Kula, appellee, a tenure contract in statutory form entitling him to teach in the schools of the township as a full-time professional employe, and assigned him to the York Run School, where he taught in the elementary grades for the next two school years. He had originally entered the service of the school district as a substitute teacher in the fall of 1938.

2. On May 14, 1945, appellee left his school room during the morning to attend a funeral and was absent until noon. Early that morning he had informed Miss Katherine Jerens, the principal of the school, of his desire to attend the funeral, and she had assigned one of the pupils to take charge of his room while he was absent.

3. On June 1, 1945, by direction of Mr. L. L. Moser, the supervising principal of the township, who was then ill and unable himself to conduct the usual year-end examinations, appellee assisted in examining the eighth grade pupils for admission to the high school. Three of those whom he examined in spelling failed on the first test to earn passing grades, whereupon, with the permission of Miss Jerens, he gave them a second test, pronouncing the words slowly and by syllables, but still one of them failed to pass. He then consulted with Miss Jerens, and with her approval passed all three. He had previously informed Mr. Moser that a few of the pupils who were mentally slow and above the average age probably would not be able to earn passing grades, and Mr. Moser, after inquiring who they were, had instructed him nevertheless to pass them all. For some years it had been the policy of the supervising principal to promote all retarded eighth grade pupils who seemed to have a reasonable prospect of succeed-

ing in high school, especially those believed to be doing as well as they could.

4. On August 13, 1945, the school board adopted a resolution assigning the teachers of the township to the various schools they were to teach respectively during the ensuing school year beginning on September 4, 1945, by which resolution appellee was assigned to the Glendale school, a one-room school in a secluded mountainous part of the township; and on August 30, 1945, the supervising principal informed him of the action of the board. The York Run school, in which he had been teaching regularly for two years and as a substitute before the date of his tenure contract, is a modern, multiple-room building conveniently located in the most populous section of the township, and the administrative center of its school activities. Considering himself to have been unjustly treated, he went at once to see several of the directors and asked them to reconsider their action. On Tuesday, September 4, 1945, the opening day of the term, he presented himself to the supervising principal at York Run and inquired whether his assignment to Glendale had been changed. On being told that it had not been, he declared, "I am not going to Glendale. I am not going to teach. I am sick". Thereupon the supervising principal assigned one of the substitute teachers to Glendale who took over the school immediately without any interruption of the school schedule. The next evening appellee called the home of the supervising principal by telephone, leaving word that he would report for duty in the morning, and at that time, Thursday, September 6, 1945, he appeared at the office of the supervising principal, exhibited a certificate from a reputable physician to the effect that he had been under medical treatment and unable to work for the previous two days, and stated that he was ready to go to the Glendale school to which he had been assigned; but

the supervising principal told him that the position had been filled, another teacher having been sent to Glendale, and that he had no other school for him. On the same day the information that the supervising principal had given him was confirmed by the secretary of the school board.

5. On December 3, 1945, the school board adopted a resolution preferring against the appellee charges of persistent negligence and persistent and wilful violation of the school laws of the Commonwealth, setting forth that on May 14, 1945, he had been absent from his schoolroom without permission; that on June 1, 1945, while conducting an examination of eighth grade pupils in spelling, he had given improper assistance to three of them; and that on September 4, 1945, he had refused to teach in the school to which he had been assigned, and thereafter absented himself from his duties without reasonable cause. The resolution of the school board provided that a copy of the charges should be served upon appellee and that he should be given a hearing as required by law, but fixed no time or place for the hearing.

6. On January 22, 1946, not having received a copy of the charges against him or notice of any hearing, appellee presented to the Court of Common Pleas of Fayette County, at no. 350, December term, 1945, his petition for a writ of alternative mandamus requiring the school board to furnish him with a written statement of the charges, together with a written notice of the time and place of hearing thereon, and the matter was so proceeded in before the court that on March 29, 1946, the school board was ordered to do so, the hearing to be held on or before April 10, 1946.

7. On March 30, 1946, the school board served on the appellee in writing a statement of the charges as

contained in the resolution of December 3, 1945, and a notice that a hearing thereon would be held on April 10, 1946. On the latter date the appointed hearing was commenced, and after some testimony had been taken was, by agreement, adjourned to April 15, 1946, when it was concluded; whereupon all the charges except as to one of the three pupils alleged to have been improperly assisted were determined by the votes of more than two thirds of the members of the school board, duly recorded, to have been sustained and substantiated by the evidence, and in accordance with such determination appellee was discharged, written notice of which action was thereafter delivered to his attorney.

8. Appellee has not been permitted to teach in the schools of the township at any time since September 4, 1945.

9. Appellee is not guilty of persistent negligence.

10. Appellee is not guilty of persistent and wilful violation of the school laws of the Commonwealth.

## Discussion

It seems to us obvious that the case is one that must be decided on its merits, instead of being disposed of on procedural grounds. All the statutory requirements for the dismissal of a professional employe, including the statement of charges, notice, hearing, and recorded vote, were duly observed by the school board. It was not improper for the board itself to institute the proceeding: Cooke v. Dodge, 299 N. Y. Supp. 257; nor was the board precluded from exercising its statutory authority merely because it was not prepared to accept appellee's explanations and to reassign him to the position he had rejected. Although the Superintendent of Public Instruction may have been entitled to believe that certain members of the board were biased against

appellee, bias on their part could affect only the judicial character of the proceeding, not its formal sufficiency. On the evidence, however, we are of opinion that the action of the board was unwarranted, and therefore the superintendent's order of reinstatement will be affirmed.

At the hearing before us appellee's refusal on September 4, 1945, to accept his assignment to the Glendale school was the only charge seriously pressed against him. It is true that a teacher's refusal to accept an assignment that a school board has the power to make constitutes negligence and a violation of the school laws of the Commonwealth within the meaning of the Teachers' Tenure Act: Com. ex rel. Wesenberg v. Bethlehem School District et al., 148 Pa. Superior Ct. 250; Ganaposki's Case, 332 Pa. 550; Wesenberg Case, 346 Pa. 438; but to warrant a discharge on those grounds the statute in terms requires that the negligence be persistent and that the violation of law be both persistent and wilful. The word "persistent" imports in the context of the statute a continued course of conduct despite warning and opportunity to correct it, and "wilful" a deliberate intention to disobey: Sinton's Case, 151 Pa. Superior Ct. 543; Horosko v. School District of Mt. Pleasant Township, 135 Pa. Superior Ct. 102; Fresno City High School District v. DeCaristo, 33 Cal. App. 2d 666, 92 P.(2d) 668. In our view appellee's conduct on the one occasion, amended, as it was, within two days, cannot, under the circumstances recited in our fourth finding, be fairly regarded as either persistent or wilful. His abrupt relegation to a remote and isolated school in the mountains was undoubtedly a hard blow that left him deeply dejected and nervously overwrought, and it is evident that he acted impulsively under the stress and emotions of the moment, rather than obstinately or perversely. Hence,

we are of the opinion that his discharge for so brief and unpremeditated a transgression contravenes the statute, especially since no lack of fitness or capacity to perform the duties of his position is involved. As the words "persistent" and "wilful" suggest, some allowance must be made for ordinary human frailties.

### Conclusions of law

1. Appellee is entitled to an order affirming the action of the Superintendent of Public Instruction and reinstating him as a professional employe of the school district.

2. The school district should pay the costs.

### Order nisi

And now, February 26, 1947, upon consideration of the foregoing case, it is ordered, adjudged, and decreed as follows:

1. That the order of the Superintendent of Public Instruction dated August 30, 1946, reversing the action of the Board of School Directors of Georges Township, appellant, in discharging Joseph Kula, appellee, as a professional employe of said district and directing said board to reinstate him be affirmed.

2. That said board of school directors retain and reinstate said Joseph Kula as a professional employe under the terms of his contract dated August 30, 1943.

3. That said school district pay the costs of this proceeding.

The prothonotary is directed to enter this order nisi, and to give notice of its entry to the parties or their counsel of record, and if no exceptions are filed within 10 days after notice, to enter it as the final order, as of course.

---

NOTE.—Exceptions to the foregoing adjudication were dismissed by the court en banc on August 5, 1947.