## SCHOOL CITY OF EAST CHICAGO *v*. SIGLER

[No. 27,505.   Filed October 7, 1941.]

Allen P. Twyman, of East Chicago, for appellant.

Oscar B. Thiel and John W. Lyddick, both of Gary, for appellee.

RICHMAN, J.—Appellee was a tenure teacher in the schools of appellant. His last contract was dated September 6, 1937, was on the official form prescribed by the State Superintendent of Public Instruction and covered the school year beginning in the fall of 1937. It contained a provision that the teacher should "observe all rules and regulations .of the properly constituted school authorities."

In the afternoon of March 9, 1938, appellee mailed to the Secretary of State a declaration of appellee's candidacy for the nomination for the office of state representative. In the evening of the same day the school board of appellant passed a resolution reading, in part, "that on and after this date it is hereby declared to be a rule governing such school system that any school employee who becomes a candidate for any elective political office, will be required to take a leave of absence, without pay, such leave becoming effective upon filing declaration of intention of becoming any such candidate for office and continuing for the duration of such political activity, and during the period of active service in such office, if elected thereto."

This resolution was brought to the attention of all the teachers, including appellee, about a week later. The school board by letter to appellee dated March 29, 1938, notified him that it would enforce the rule so adopted, not as of the date of filing of his declaration, but as of April 2, 1938, the last day when under the law he was permitted to withdraw his candidacy. He had a conference with the school board but there was no compliance with the statutory provisions for notice and hearing as in the case of cancellation of a teacher's contract. He continued to be a candidate until he was defeated in the primary election on the third day of May. He was not permitted to teach from April 4th to May 3rd when he returned to the schools and was there employed until January 1, 1940, when he voluntarily took a leave of absence. He was not paid for the month preceding the primary and brought this action for his salary. The issue was presented by complaint and by affirmative answer setting up the rule as a defense. Judgment for $248.40 was recovered. The questions arose on the assignment in the motion for new trial that the evidence is insufficient to sustain the decision of the trial court.

Appellee asserts that this court is without jurisdiction because the members of the school board whom he made parties in the lower court are not parties to the appeal. Their demurrer to his complaint was sustained on the ground that they had no personal interest in the subject-matter of the action. They were not mentioned in the judgment. This court has jurisdiction of the subject-matter and all necessary parties as appellee in terms admitted in his petition for extension of time for filing his brief. We shall consider the case on its merits.

Appellant relies upon the rule adopted by the resolution of March 9, 1938, as a complete defense to the action. Appellee insists that the school board was without power to make the rule, that it conflicts with his contract which may not be impaired by any action of appellant subsequent to its execution and that, if it was a valid rule, it could not be enforced without compliance with the same procedure required for cancellation of a tenure teacher's contract.

A statute requires school trustees to "take charge of the educational affairs of their respective townships, towns and cities." § 28-2410, Burns' 1933, § 5967, Baldwin's 1934.. They are required to furnish teachers and equipment. "for the thorough organization and efficient management of said schools." The power to make reasonable rules and regulations to that end cannot be successfully challenged. *Fertich* v. *Michener* (1887), 111 Ind. 472, 11 N. E. 605, 14 N. E. 68; *State, ex rel.,* v. *Beil* (1901), 157 Ind. 25, 60 N. E. 672. Activities of the teacher which have a reasonable bearing on his ability, efficiency and influence in the classroom seem to us to be within the field of such regulation by the school board.

It will be conceded that he has the same privilege as any other citizen to become a candidate for public office. Such candidacy should not be and is not ground for cancellation of his contract as a permanent teacher. But anyone who has been a candidate recognizes that political activity is apt to interfere with one's usual avocation and this fact, independent of any possible involvement of the school system in political controversies, affords a sound reason for a temporary severance of the candidate's connection with the schools. This rule, general in terms and applying to all teachers, does not to us seem such an un-

reasonable exercise of the board's powers as to warrant judicial interference. The board, not the courts, is charged with the duty of managing the school system and so long as it acts with fairness its decisions on matters within its discretion are not subject to judicial review.

To bind the teacher it is not necessary that the rule be made prior to the execution of his contract. In express terms it contains his agreement to ■ "observe all rules and regulations of the school authorities." Without such provision we think this agreement would be read into the contract. The tenure law does not purport to take from the school authorities the management of the schools. If only such rules could be enforced as were in existence when the contract was signed, the school system might be static for at least one year. New situations could not be met promptly; new problems would have to await solution until the close of the school year. We cannot find any such intent in the contract nor in the purpose behind the tenure law. *"All* rules and regulations" must, we think, include those adopted after as well as before the execution of the teacher's contract. Any other interpretation would unduly hamper the administration of the public school system by the authorities charged with its management.

The title of the Tenure Act, Acts 1927, ch. 97, § 5, p. 259, reads: "An act defining teachers and permanent teachers, providing for their employment ■■ and release, and defining, and providing for the making and cancelling of, indefinite contracts." The act is silent on the subject of temporary release until the fifth section, as amended, (§ 28-4311, Burns' 1933, § 6007, Baldwin's 1934), which reads:

"Any such school corporation, upon written request, may grant leaves of absence, for periods not exceeding one [1] year, to any permanent teacher for study or professional improvement or because of physical disability or sickness, subject to such rules and regulations governing leave of absence as may be adopted by such corporation; Provided, That without written request any such school corporation may place a permanent teacher on leave of absence for periods of not exceeding one [1] year because of physical or other disability or sickness; Provided, That such teacher shall have a right to a hearing on *such* unrequested leave of absence in accordance with the provisions for hearings contained in section two [§ 28-4308] of this act." (Our italics.)

The provision made for voluntary leave of absence seems to be in the nature of a limitation. Undoubtedly before the act was passed school boards could grant leaves of absence and could adopt rules and regulations upon the subject. This right is recognized by the act but a limitation is imposed that such absence shall not exceed a year. The same limitation is made as to involuntary leaves where the cause is "physical or other disability or sickness." The word "other" injects an element of uncertainty that requires interpretation. "Physical disability" and "sickness" are in the same category. Under the maxim *ejusdem generis* "other" must be deemed to refer to a like disability, one that affects the physical ability to teach. It certainly cannot be held to include candidacy for office or political activity. The first proviso, therefore, prevents the school board from enforcing for a longer time than one year an involuntary leave of absence where the cause relates to physical ability of the teacher. Upon other involuntary leaves of absence the statute is silent. If there should be any further curtailment of the school board's general

authority in the management of the schools the remedy is with the Legislature.

We are supported in this reasoning by the express language of the second proviso in which the word "such" (italicized, *supra*) confines the "provisions for hearings" to only those unrequested leaves of absence as are occasioned by "physical or other disability or sickness." This too, we think, is a clause of limitation and not, as appellee contends, a recognition of the teacher's right to notice and hearing in all cases where the employer-employee relation is to be disturbed. It is true that wherever the act refers to any involuntary release, temporary or permanent, it provides for notice and hearing. It may be that such provision is desirable in the case of every unrequested leave, whether it is for a cause referred to in the statute or for any other cause. But we have no more right to read into the act a prohibition against involuntary leave without notice and hearing than to read in a prohibition against rules and regulations for involuntary leaves on other grounds than those specifically mentioned. In each case the statute is silent.

Finally appellee urges that the rule is not enforceable in his case because it was adopted after the day on which he announced his candidacy. However it was not enforced according to its strict terms. He was given a reasonable opportunity to withdraw his candidacy after he knew of the rule. He conferred with the board and he had the letter stating its position. Perhaps he would have been embarrassed if he had withdrawn his name but he had fair choice between such embarrassment and loss of a month's salary. We find nothing in the record to indicate that the board was actuated by personal or political motives in its enactment or application of the rule.

The evidence is insufficient to sustain the decision. Judgment reversed, with instruction to sustain appellant's motion for new trial.

NOTE.—Reported in 36 N. E. (2d) 760, 136 A. L. R. 1149.